UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| FINWISE BANK,<br><br>            Plaintiff,<br><br>v.<br><br>GREAT AMERICAN FINANCE HOLDINGS, LLC,<br><br>            Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [50] DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:24-cv-00408-DBB-DBP<br><br>District Judge David Barlow |

Before the court is Defendant Great American Finance Holdings, LLC's ("Great American") Motion for Partial Summary Judgment.[1] Great American moves for partial summary judgment against Plaintiff FinWise Bank ("FinWise") on two points. First, Great American contends that their contract prohibits FinWise from recovering certain fees after their contractual relationship allegedly ended on May 17, 2024. Second, Great American contends that FinWise cannot assert an unjust enrichment claim on the same set of facts as its claim for breach of contract. For the reasons below, the court denies Great American's motion.[2]

**UNDISPUTED MATERIAL FACTS**

FinWise and Great American entered into a Loan Program Agreement ("Program Agreement") under which Great American agreed to perform marketing, administrative, and subservicing services in connection with certain loans originated by FinWise through an online

---

[1] Mot. for Partial Summ. J. ("Mot."), ECF No. 50, filed Oct. 6, 2025.
[2] Having reviewed the briefing and relevant law, the court finds that oral argument would not materially assist in resolving the matter. *See* DUCivR 7-1(g).

lending program.[3] Under the Program Agreement, Great American agreed to remit fees to FinWise as outlined in the Financial Terms Letter Agreement ("FTL Agreement"), which states that Great American would make two disbursements to FinWise on a monthly basis.[4]

The first disbursement is "the Minimum Bank Program Fee" ("MBP Fee").[5] The MBP Fee is defined in the FTL Agreement as "calculated by adding the amounts resulting from multiplying the aggregate principal amount of Loans and Draws originated in such month in the respective tiers in column (B) [Aggregate Principal Amount of Loans and Draws Originated in a Given Month] by the amounts set forth in column (C) for such tiers (such sum, the "Percentage Bank Program Fee") in the following chart."[6] The FTL Agreement provides that the MBP fees accrue only "during the Term" of the Program Agreement "for each Month thereafter through the end of the Term."[7]

The second disbursement is "Bank Program Expenses" defined, in relevant part, as "reasonable out-of-pocket costs and expenses incurred by [FinWise] in connection with this Program Agreement and [FinWise's] performance under the Program."[8]

The parties agreed that the initial term of the Program Agreement would continue "until December 31, 2024 . . . unless otherwise terminated as provided herein."[9] The Program Agreement also provides that either party can terminate the Program Agreement as follows:

> Upon occurrence and continuance of a material breach of this Program Agreement (an "Event of Default") by [either party], the other may terminate this

---

[3] Mot. ¶¶ 1–2.
[4] Id. ¶¶ 4–5.
[5] See Decl. of Richard Cawley ("Cawley Decl."), Ex. 2 ("FTL Agreement") § 1(a)(i), ECF No. 52, filed Oct. 6, 2025.
[6] Id. § 2(A).
[7] Id. § 2(B).
[8] Cawley Decl., Ex. 1 ("Program Agreement"), Schedule 1.
[9] Program Agreement § 7.1.

>Program Agreement following the provision of written notice identifying the material breach and the defaulting Party's failure to cure the same within (30) days of such notice."[10]

Finally, the Program Agreement states that "termination of this Program Agreement shall not terminate, effect or impair any rights, obligations or liabilities of either Party hereto that may have accrued prior to such termination or that, under the terms of this Program Agreement, continue after the termination."[11]

By January 2024, Great American was in arrears on three payments to FinWise.[12] On April 17, 2024, FinWise delivered a "Notice of Breach of Contract" to Great American (the "Notice"), notifying Great American that it was in breach of its obligations to pay FinWise its fees and to reimburse it for its expenses.[13] The Notice specified that Great American's breach "constitutes an Event of Default under the [Program Agreement]" and the "current amount due to [FinWise] is $313,117.41."[14]

Fifty days after it delivered the Notice, FinWise filed the Complaint in this action, asserting a claim for breach of both the Program Agreement and FTL Agreement, as well as a claim for unjust enrichment.[15] In its Complaint, FinWise alleges that "it would be unjust and inequitable to allow Great American to benefit from retaining fees with respect to the Program and refusing to reimburse FinWise for its expenses under the Program Agreement."[16] The Complaint also states that Great American has been unjustly enriched in an amount in excess of

---

[10] Program Agreement § 8.1(a)(i).
[11] *Id.* § 7.1.
[12] Pl.'s Opp'n to Mot. for Partial Summ. J. 10, ECF No. 53, filed Nov. 3, 2025; Def.'s Reply to Opp'n to Mot. for Partial Summ. J. 4, ECF No. 57, filed Nov. 17, 2025.
[13] Cawley Decl., Ex. 3 ("Notice").
[14] *Id.*
[15] Compl., ECF No. 1, filed June 6, 2024.
[16] *Id.* ¶ 24.

$313,117.41.[17] In its initial disclosures, FinWise states that it seeks to recover both Bank Program Expenses and MBP Fees from December 31, 2023 through December 31, 2024, subject to the terms of the Program Agreement and FTL Agreement.[18]

Finally, the Program Agreement contains a choice-of-law provision providing that the "Program Agreement and the Sale Agreement shall be construed in accordance with the laws of the State of Utah."[19]

## STANDARD

Summary judgment is proper under Federal Rule of Civil Procedure 56(a) "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] "[T]he 'mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'"[21] "To determine whether a 'genuine issue' as to a material fact exists, [the court] consider[s] 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[22] "Mere allegations unsupported by further evidence . . .

---

[17] *See id.* ¶ 25.
[18] *See* App. to Mot. ("App."), Ex. 5 § 3, ECF No. 51, filed Oct. 6, 2025.
[19] Program Agreement § 10.3.
[20] Fed. R. Civ. P. 56(a).
[21] *Klein v. Roe*, 76 F.4th 1020, 1028 (10th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171–72 (10th Cir. 2021) ("To survive a motion for summary judgment, the nonmoving party must show more than '[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position . . . there must be evidence on which the jury could reasonably find for the [nonmoving party].'" (alterations in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))).
[22] *Klein*, 76 F.4th at 1028 (quoting *Anderson*, 477 U.S. at 252). Relevant evidence includes "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005) (citing Fed. R. Civ. P. 56(c)).

are insufficient to survive . . . summary judgment."[23] "The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but once the moving party has done so, the burden shifts to the non-movant to establish a genuine issue of fact."[24] The court "view[s] the evidence and draw[s] all reasonable inferences in favor of the nonmoving party."[25]

## DISCUSSION

Great American seeks summary judgment on two issues. First, Great American alleges that FinWise is precluded from seeking recovery of MBP fees after May 17, 2024 because the Program Agreement terminated on that date, when the cure period expired.[26] Second, Great American alleges that FinWise cannot seek recovery for unjust enrichment because that claim is based upon the same set of facts as FinWise's claim for breach of the Program Agreement and because there is an express contract that covers the subject matter of the claim.[27] The court addresses each issue in turn.

I.  **Great American Is Not Entitled to Summary Judgment on post-May 17, 2024 MBP Fees**

"In interpreting a contract, the intentions of the parties are controlling."[28] "And the best indication of the parties' intent is the ordinary meaning of the contract's terms."[29] Therefore, a court will "look first to the contractual language itself and 'consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none.'"[30]

---

[23] *James v. Wadas*, 724 F.3d 1312, 1319–20 (10th Cir. 2013) (citation omitted).
[24] *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[25] *Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1140 (10th Cir. 2023).
[26] Mot. 1–2, 9–12.
[27] *Id.* 2, 12–13.
[28] *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139 (cleaned up).
[29] *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994.
[30] *Vanderwood v. Woodward*, 2019 UT App 140, ¶ 24, 449 P.3d 983 (quoting *McNeil Eng'g & Land Surveying, LLC v. Bennett*, 2011 UT App 423, ¶ 8, 268 P.3d 854).

"Where 'the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law.'"[31] "But where a contractual term or provision is ambiguous as to what the parties intended, the question becomes a question of fact to be determined by the fact-finder."[32] And, as mentioned above, when "the evidence presents a sufficient disagreement to require submission to a jury," a party cannot prevail on that claim as a matter of law.'"[33]

Great American's argument on damages relies on two assumptions: the Program Agreement automatically terminated on May 17, 2024, and MBP Fees are lost profits.[34] The court addresses each issue in turn.

A.    **Termination of the Program Agreement**

Great American alleges that the Program Agreement terminated when the notice and cure period ended, on May 17, 2024, pursuant to sections 3.3(i)(f) and 8.1(a)(i) of the Program Agreement.[35] In response, FinWise argues that the Program Agreement did not automatically

---

[31] *Café Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235 (quoting *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134).
[32] *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395.
[33] *Klein*, 76 F.4th at 1028 (quoting *Anderson*, 477 U.S. at 252).
[34] For the first time in its reply, Great American argues the distinction between direct damages and lost profits is one without a difference and cites Tenth Circuit cases applying Kansas and Colorado law that equate lost profits with direct damages. *See* Reply 13 (citing *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 839 (10th Cir. 2016) ("[L]ost profits can be either direct or consequential damages."); *Penncro Assocs., Inc. v. Spring Spectrum, LP*, 499 F.3d 1161, 1156 (10th Cir. 2007) ("Lost profits, under appropriate circumstances, can be recoverable as a component of either (and both) direct and consequential damages."). The court declines to consider Great American's argument and case law on this point, however, because the Tenth Circuit generally does not allow parties to raise arguments for the first time in a reply. "The reasons for our general rule are two-fold. First to allow [a party] to raise an argument for the first time in a reply brief would be manifestly unfair to the [opposing side] who, under our rules, has no opportunity for a written response. Second, the rule also protects us from issuing an improvident or ill-advised opinion because we did not have the benefit of the adversarial process." *United States v. Leffler*, 942 F.3d 1192, 1197–98 (10th Cir. 2019) (cleaned up).
[35] Mot. 10–11.

terminate on May 17, 2024 because section 3.3(i)(f) is not a termination clause and because section 8.1(a)(i) provides a discretionary right to terminate that it did not invoke.[36] Thus, this issue hinges on the interplay of sections 3.3(i)(f) and 8.1(a)(i) of the Program Agreement.

First, Section 3.3(i)(f) is cited in context as follows:

Section 3.3 Conditions Precedent.

(i) Conditions Precedent to the Obligations of [FinWise]. The obligations of [FinWise] in this Program Agreement to extend credit to Applicants are subject to the satisfaction of the following conditions precedent on or prior to [FinWise's] funding of a Loan:

. . . .

(f) There is no continuing Event of Default under this Program Agreement beyond any applicable notice and cure period.[37]

Next, Section 8.1(a) falls under "ARTICLE VIII. TERMINATION" and states as follows:

(i) Event of Default. Upon occurrence and continuance of a material breach of this Program Agreement (an "Event of Default") by Service Agent or Bank, the other may terminate this Program Agreement following the provision of written notice identifying the material breach and the defaulting Party's failure to cure the same within thirty (30) days of such notice."[38]

According to FinWise, section 3.3(i)(f) "has nothing to do with termination rights under the Program Agreement—it only applies to FinWise's obligations to extend credit."[39] Great American responds that the distinction is without a difference because when FinWise's

---

[36] Opp'n 13–23.
[37] Program Agreement § 3.3.
[38] Id. § 8.1.
[39] Opp'n 17.

obligations ended, there was no longer a valid contract since "each party must be bound to give some legal consideration to the other" for a contract to be binding.[40]

"Under Utah law, a party's intent to terminate a contract must be 'unequivocal' and 'unconditional.'"[41] "Ambiguous conduct and language intended to signal contract termination will be deemed not to have terminated the contract."[42] "Notice of termination or cancellation of a contract must be clear and unequivocal, and if it isn't, it doesn't operate to cancel the contract."[43]

In *C.W. Mining Co.*, the Tenth Circuit applied Utah law to a similar contractual question about whether a provision provided a discretionary right to terminate or terminated the contract automatically.[44] The provision at issue stated, in relevant part, as follows:

> If [a party] shall not comply with any of the provisions, or covenants, or agreements herein written and contained, and such default shall continue for a period of 60 days after service of written notice, by certified or registered mail, by [nonbreaching party] identifying the default . . . then and in such event this Agreement may be terminated and all of the rights of [the breaching party] shall cease and be wholly determined and [the nonbreaching party] may at once take possession of any or all of the properties herein described.[45]

The court held that the "conditional language 'may be terminated' gives [the nonbreaching party] the option to terminate; it does not provide for automatic termination when the 60-day notice period ends."[46]

---

[40] *See* Reply 11 (quoting *Manwill v. Oyler*, 361 P.2d 177, 178 (Utah 1961)).
[41] *Adv. Recovery Sys., LLC v. Am. Agencies, LLC*, No. 2:13-cv-283, 2016 WL 6916539, at *8 (D. Utah Sept. 28, 2016) (quoting *Glenn v. Reese*, 2009 UT 80, ¶ 19, 225 P.3d 185).
[42] *Glenn*, 2009 UT 80, ¶ 19 (internal quotation marks and citation omitted).
[43] *Stein Eriksen Lodge Owners Ass'n Inc. v. MX Techs. Inc.*, 2022 UT App 30, ¶ 69, 508 P.3d 138 (internal quotation marks and citation omitted).
[44] *In re C.W. Mining Co.*, 641 F.3d 1235, 1241–42 (10th Cir. 2011).
[45] *Id.* at 1241.
[46] *Id.* at 1242.

So too here. The conditional language of section 8.1(a)(i) provides discretionary authority to terminate but does not automatically terminate the contract by stating that upon default, the nonbreaching party "*may* terminate this Program Agreement following the provision of written notice identifying the material breach and the defaulting Party's failure to cure the same within thirty (30) days of such notice."[47] Great American has not established that FinWise signalled through "conduct or language" a clear intent to terminate the Program Agreement.[48] It simply provided notice to Great American of its breach. That notice, together with the passage of the 30-day cure period—were simply necessary predicates to any termination of the Program Agreement. Because Great American has not shown that FinWise exercised its discretionary right to terminate the Program Agreement, there is no basis for concluding that the contract terminated at the end of the cure period.

The section 3.3(i) argument is a non-starter. Unlike section 8.1(a)(1), which is under the article titled "Termination," section 3.3(1) deals with "Conditions Precedent to the Obligations of the Bank." Great American notes that the headings are not dispositive. But the text of the cited section offers no support for Great American's automatic termination reading because it is not about termination. Instead, the section makes plain that it is about the "obligations of the Bank in this Program Agreement to extend credit" and set forth "the satisfaction of [] conditions precedent on or prior to Bank's funding of a loan." The question before the court is not whether the Bank was required to extend credit or fund a loan. There is no ambiguity here—the language cited by Great American simply cannot support its argument.

---

[47] Program Agreement § 8.1 (emphasis supplied).
[48] *Glenn*, 2009 UT 80, ¶ 19 (internal quotation marks and citation omitted).

But assume for a moment that it somehow inexplicably could. The section still could not automatically terminate the contractual relationship between the parties because it must be interpreted in harmony with section 8.1(a)(i). Utah courts "consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none."[49] Great American's creative interpretation of section 3.3(i)(f)—as terminating the Program Agreement automatically—fails to give effect to section 8.1(a)(i)'s conditional language that provides only discretionary authority to terminate. Furthermore, section 3.3(i)(f) must be viewed in light of section 7.1, which states that "termination of this Program Agreement shall not terminate, effect or impair any rights, obligations or liabilities of either Party hereto that may have accrued prior to such termination or that, under the terms of this Program Agreement, continue after the termination."[50] Accordingly, section 3.3(i)(f) cannot be interpreted as an canceling the parties' "rights, obligations, or liabilities" and essentially dissolving the contract.[51]

For all of these reasons, Great American's termination argument fails.

### B. Definition of MBP Fees

Great American next argues that FinWise cannot recover MBP Fees claimed after May 17, 2024, because lost profits are prohibited under Section 10.2 and the MBP Fees "are the profits FinWise anticipated under the Program Agreement."[52] In response, FinWise claims they are not lost profits, but "recoverable direct damages" that stem directly from Great American's breach.[53]

---

[49] *McNeil Eng'g & Land Surveying, LLC v. Bennett*, 2011 UT App 423, ¶ 8, 268 P.3d 854 (quoting *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134) (cleaned up).
[50] Program Agreement § 7.1.
[51] *Id.*
[52] Mot. 8–12.
[53] Opp'n 17–23.

In its entirety, Section 10.2 states as follows:

<u>Limitation of Liability</u>. NOTWITHSTANDING ANYTHING TO THE CONTRARY OR INCONSISTENT IN THIS PROGRAM AGREEMENT OR THE SALE AGREEMENT, BUT EXCEPT AS TO A BREACH BY A PARTY OF 10.4 OR 10.5, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, CONSEQUENTIAL, OR EXEMPLARY DAMAGES OR LOST PROFITS (EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES) ARISING OUT OF OR IN CONNECTION WITH THIS PROGRAM AGREEMENT AND THE SALE AGREEMENT; <u>PROVIDED, HOWEVER</u>, THAT NOTIFICATION RELATED COSTS SHALL NOT BE DEEMED INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, CONSEQUENTIAL, OR EXEMPLARY DAMGES.[54]

The provision expressly bars "lost profits" and "indirect, special, incidental, punitive, consequential, or exemplary damages," but it does not prohibit direct damages.[55]

Under Utah law, the "primary remedy for economic losses caused by the non-performance of contracts is an action for damages for breach."[56] "Damages recoverable for breach of contract include both general [or direct] damages, *i.e.*, those flowing naturally from the breach."[57] Unlike direct damages, "consequential damages, or special damages, are damages that do not directly flow from a breach of contract."[58] In other words, "[c]onsequential damages are damages that are not the direct and immediate result of the injury, but depend in part on factors outside the control or expectation of the parties."[59]

---

[54] Program Agreement § 10.2 (emphases in original).
[55] *Id.*
[56] *Kraatz v. Heritage Imports*, 2003 UT App 201, ¶ 4, 71 P.3d 188.
[57] *McCleve Props., LLC v. D. Ray Hult Fam. Ltd. P'ship*, 2013 UT App 185, ¶ 17, 307 P.3d 650 (internal quotation marks and citation omitted); *see also Beck v. Farmers Ins. Exh.*, 701 P.2d 795, 801 (Utah 1985) (defining general damages as "those resulting from the ordinary and obvious purpose of the contract").
[58] 22 Am. Jur. 2d *Damages*, § 42 (Nov. 2025 update) (cleaned up); *see also McCleve Props.*, 2013 UT App ¶ 17 (stating that consequential or special damages are those which "arise from the special circumstances of the case").
[59] *United States v. Wilfong*, 551 F.3d 1182, 1187 (10th Cir. 2008) (citing Black's Law Dictionary 394 (8th ed. 2004)).

Under Utah law, lost profits are a "common form of consequential damages."[60] In *Trans-Western Petroleum, Inc. v. United States Gypsum Company*, the Utah Supreme Court offered a hypothetical to illustrate how "not all lost gains are lost profits" under Utah law:[61]

> [T]he plaintiff contracts to purchase Blackacre for $10,000 and at the time of performance its market value is $20,000, then the plaintiff surely has an expectancy; but since that expectancy reflects a market gain in the very performance contracted for, it is an item of general damages," not consequential damages . . . . Alternatively, suppose a plaintiff owns a movie theater and leases property next to the theater from a landlord for parking, and the landlord then denies plaintiff access to the parking lot, thereby breaching the lease. Without convenient parking, film enthusiasts take their business elsewhere. The plaintiff sues for the movie theater's lost profits, which are consequential damages.[62]

The Supreme Court concluded that, unlike its breach of contract claims, the plaintiff's claim involving lost profit "from a hypothetical sale of its lease to a third party" constituted a claim for lost profits or consequential damages.[63]

Likewise, the MBP Fees in this matter are more akin to the damages in the first hypothetical, which involved a real estate contract and damages flowing from the obligation between the two parties. Unlike the damages in the second hypothetical—involving loss in revenue due to a breach in a collateral contract— Great American's breach was a failure to pay FinWise the MBP Fees, which represent FinWise's primary benefit of the Program Agreement and Great American's core obligation under it. Moreover, the MBP Fees are not speculative, nor are they related to a sale.[64] Instead, they are bargained-for compensation defined under the

---

[60] *Trans-Western Petroleum, Inc. v. U.S. Gypsum Co.*, 2016 UT 27, ¶ 19 n.13, 379 P.3d 1200 (citation omitted).
[61] *Id.*
[62] *Id.*
[63] *Id.* at ¶ 19.
[64] *See* "Lost Profits," Black's Law Dictionary 1852 (12th ed. 2024) (defining lost profits in a contract case as "[a] measure of damages that allows a seller to collect the profits that would have been made on the sale if the buyer had not breached").

contract that do not involve a third party or depend on the outcome of the Program Agreement. Therefore, the MBP Fees that FinWise seeks to recover are not lost profits or consequential damages, but rather direct damages "flowing naturally from the breach."[65]

In sum, Great American failed to show that the Program Agreement automatically terminated on May 17, 2024. Great American did not establish that FinWise used the discretionary authority provided in the termination provision to terminate the Program Agreement. And the automatic termination reading of the contract Great American proposes is not supported by the contract. Additionally, Great America failed to show that the MBP Fees are precluded lost profits. Accordingly, summary judgment on post-May 17, 2024 MBP Fees is denied.

## II.     Great American Is Not Entitled to Summary Judgment on Unjust Enrichment

Great American also contends that, as a matter of law, FinWise cannot plead an unjust enrichment claim upon the same set of facts as its breach of contract claim where there is an express contract regarding the subject matter of the claim.[66] In response, FinWise argues that the unjust enrichment claim is properly pled as an inconsistent theory of recovery in the alternative and that the dispute over the scope of the Program Agreement precludes summary judgment.[67]

To prevail on a claim for unjust enrichment, a party must show that a benefit has been "conferred by one [party] on another," that "the conferee must appreciate or have knowledge of the benefit," and that "there must be acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without

---

[65] *McCleve Props.*, 2013 UT App ¶ 17.
[66] Mot. 2, 12–13.
[67] Opp'n 23–24.

payment of its value."[68] "Unjust enrichment 'is designed to provide an equitable remedy where one does not exist at law.'"[69] Therefore, "a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue" because "[i]f there were a contract, it, rather than the law of restitution, would govern the parties' rights and determine their recovery."[70] Generally, then, "a party may recover in quantum meruit only after legal remedies have been exhausted."[71]

Utah law, however, "supports the proposition that even where there is an express contract, an equitable claim may be viable, under specific factual circumstances, if the equitable claim is based on a separate representation or misleading act arising independently of the express contract."[72] FinWise does not invoke this exception.[73] Instead, it argues that the parties' dispute about the scope and enforceability of the Agreement makes it inappropriate to dismiss an unjust enrichment claim at this stage.[74]

In Utah, it is premature to dismiss an unjust enrichment claim at summary judgment "while questions regarding the validity of the contract remain unresolved."[75] Here, it is undisputed that until May 17, 2024, there was a valid contract governing the payment of MBP Fees.[76] After that date, however, the parties disagree on whether they were still governed by an

---

[68] *Allen v. Hall*, 2006 UT 70, ¶ 26, 148 P.3d 939.
[69] *AGTC Inc. v. CoBon Energy LLC*, 2019 UT App 124, ¶ 19, 447 P.3d 123 (quoting *Am. Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234.
[70] *Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 426.
[71] *Gulf Coast Shippers Ltd. P'ship v. DHL Exp. (USA), Inc.*, No. 2:09-cv-00221, 2015 WL 4557573, at *19 (D. Utah July 28, 2015).
[72] *Hillcrest Inv. Co. LLC v. Dep't of Transp.*, 2015 UT App 140, ¶ 16, 352 P.3d 128 (quoting *E & M Sales W., Inc. v. Diversified Metal Prods., Inc.*, 2009 UT App 299, ¶ 8, 221 P.3d 838).
[73] Opp'n 23–24.
[74] *Id.* 24.
[75] *Id.* at ¶ 23.
[76] Mot. 13, Opp'n 24.

enforceable contract. Unjust enrichment generally is not available when there is an express contract, but "the fact that the parties acknowledged and agreed that a contract existed between them does not necessarily lead to the conclusion that it was an enforceable contract that effectively governed their rights and obligations with respect to the subject matter of the case."[77] Accordingly, the court declines to dismiss FinWise's unjust enrichment claim at this stage when the Program Agreement's enforceability or scope is disputed by Great American.[78] Therefore, summary judgment is denied on FinWise's unjust enrichment claim.

## ORDER

Accordingly, Great American's Motion for Partial Summary Judgment is DENIED in its entirety.[79]

Signed January 23, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[77] *AGTC Inc. v. CoBon Energy LLC*, 2019 UT App 124, ¶ 22, 447 P.3d 123.
[78] *See, e.g.*, *Gulf Coast Shippers Ltd. P'ship v. DHL Exp. (USA), Inc.*, No. 2:09-cv-00221, 2015 WL 4557573, at *19 (D. Utah July 28, 2015) (allowing plaintiff to "pursue its legal and equitable claims until a jury determines the enforceability of the Agreement").
[79] ECF No. 50.